Mr. Rosen. Morning, your honors. May it please the court, Mark Rosen appears on behalf of the appellant, Bruce Brown. I think it's pretty clear and I think the facts, circumstantially as well as on the record and the plea hearing, everything that occurred, the plea agreement clearly shows that the plea agreement in the 05-CR-73 case precluded and prevented the prosecution that plea in that case on August 21st, 2006 in the 10-CR-516 case, which is the case that we are here before you on. I think what happened in the 05-CR case, when you look at it, their case was basically wrapped up in the 10-CR case at that time. They had interviewed everybody. The government basically conceded in the 10-CR-516 case during the briefing in this situation here that it was all done. Judge Lefkoe indicated in her memorandum decision, she sort of whitewashed it, had some knowledge about what was going on with this mortgage fraud situation back in August in 2006. And the memorandums I provided to the court from Bridget Grozy and Mario Moore show basically that their prosecution was wrapped up. It's also pretty clear that the plea in that 05-CR case occurred on the day of trial. The records show from the 05-CR-73 case that Mr. Brown had no intention of pleading to that case. It says, a note from a pretrial date, was the defendant wished to proceed to trial on August 21st, 2006. He was ready to go to trial. He knew, the government knew that they didn't have a case on that 05 case because Kenyatta Coates had decided he wasn't going to testify. He then comes by, and they knew about this mortgage fraud situation. They knew about it. Coates had been briefing them on that. Had the statute of limitations run on the mortgage fraud case as of the date of the plea agreement? I don't know. I'm not sure if it is or isn't, your honor. I don't know if it was or wasn't on the mortgage. They were still investigating the mortgage 05-CR-73. I think that some of the facts that were going on in that were fairly recent. Frankly, I hadn't looked into that, but I think it's a very good issue about that. But the fact of the matter is, I think it's really important because it seems to me that this part of the plea agreement that you are arguing about really only covers matters for which the statute of limitations would have run as of the time of the agreement. Because I think all that it does is, if there is a breach of the agreement, it would re-institute, it would eliminate the statute of limitations bar to those prosecutions. I think that's all this provision does. I don't know. I think that, frankly, I don't know. I think the plea agreement basically prevented the prosecution in the 10-CR-516 case. I think, regardless of the statute of limitations or not, I don't think they had a right to go forward with that prosecution in this case because it was covered under the plea agreement in the 05-CR-73 case. I mean, regardless of the statute of limitations. It's an interesting thought, Your Honor. I hadn't presented that. I was focusing on the plea agreement, which I think is basically cut and dried. I think they drafted the plea agreement. The law on this circuit and all the other circuits talks about how you have to evaluate these things based upon standard contract law. Contract law, as we all know from first year of law school, any ambiguities go against the drafter. They were the drafter. Plus, as this Court has indicated in various case law, to include Ingram, you don't even, it goes past that when somebody's giving up their right to a trial. You have to look at it. There's a concern, Ingram indicates, that there is a concern that the bargaining process not violate defendant's right to fundamental fairness. Yeah, but the main problem with your argument to me is there's no language in the agreement that prevents the government from bringing later prosecutions against Brown of the charges. Well, I think when we look at, see that's where we took in this contract theory in terms of paragraph 20, which doesn't limit the prosecution, which doesn't limit the language of the plea agreement to bar further prosecutions just to the facts of 05-CR-73. It says, any prosecutions, and they didn't, their document doesn't say, this just applies to 05-CR-73. The document they presented, the government presented, says any prosecutions that are not, by the statute of limitations, shall be commenced against the defendant. So any prosecutions applies to any prosecutions. And it's one thing to say that they didn't know about this mortgage fraud situation, that they hadn't any idea of it. It's another thing to, because that is, I think everybody's conceding that they were well aware of it. It was ready to go. When you look at syndicated, when you look at Grossi's and Mario Moore's statements, that was what happened at the trial in this matter, was basically what happened in those statements. So they were ready to go. This concept that they had some idea of what was going on, they knew everything. They were ready to go on August 21, 2006, prosecuting him on the mortgage fraud cases. But then they held off for four years, because the indictment in the 10-CR-516 case occurred on June of 2010. And so that basically corroborates everything. This whole fact situation, the whole scenario, the whole circumstances corroborates everything that Mr. Brown has indicated, that the reason they came after him in the 10-CR-516 case, four years after the plea, on the date of trial in the 05-CR-73 case, was because he wouldn't cooperate with this Gus Wright prosecution. He wouldn't cooperate with that. So basically he was ready, I think it's pretty clear under the facts of this case and the law, that they were not allowed to go forward with the prosecution on the 10-CR-516 case. And also Judge Gottschall indicated at the plea hearing in the 05-CR-73 case, she talked about that there are no other agreements. And then she said, well, that goes, there's nothing else about sentencing. And she basically said, there was nothing in that plea hearing that limited my client indicating or denied where he said there's nothing else going on in terms of what was going on. So your position is then, I take it, that the government has to inform a defendant about any other pending investigations before entering into a plea agreement? Well, I think what happened is they were discussing it. It was part of the discussion that led to the plea on August 21, 2006. So the defense was on notice about this potential charge? Yes. Because that had been part of the discussions? That's my understanding. There was no request by the defense to just make sure this thing was bulletproof, to put a term in the plea agreement that would say, and this plea agreement also covers... The mortgage fraud? Yeah. You're right, there is. I wonder if it's totally secret, government's the only side that knows about it. But that wasn't the case here. No, but I think what the defense theory was, was that paragraph 20 covers it. It covers it. I think the yellow light means I'm... Yeah, but I'd like to just... Oh, I'm sorry. Thank you. If the plea was meant to resolve or preclude a separate set of charges, wouldn't we expect to see a much more explicit provision to that effect? I think when you factor in the issue that the language of paragraph 20 talks about, it's very broad into itself. It's any prosecution. It doesn't limit itself to 05CR73, coupled with the language of Ingram that says it applies to any prosecution. But you're reading that any prosecution without what follows, any prosecutions that are not time-barred as of the date of the agreement. And technically, at the date of the agreement... You're reading it out of context. Well, technically, as of the date of the agreement on August 21, 2006, the mortgage fraud issues I don't think were time-barred. They weren't time-barred four years later, so they were still valid because they were still investigating it. So I don't think that is... I think that also covers it, too, Your Honor. I think when you look at it that way, too. Thank you, Mr. Rosen. Ms. Pozzolo, am I pronouncing that correctly? Yes, Pozzolo. May it please the Court, my name is Elizabeth Pozzolo, and I represent the United States in this appeal. The district court correctly determined that the 2006 pre-agreement between the defendant and the government did not bar the government from later defining the defendant for mortgage fraud. But why, then, is Paragraph 20 phrased in terms of any prosecutions rather than the specific charges that were encompassed within the 2005 indictment? Your Honor, I believe that the language of Paragraph 20, the purpose of that language, is to make clear to the defendant that he's waiving any statute of limitations argument should the government pursue charges that were dismissed as a result of the plea agreement. So why doesn't it say that explicitly? Your Honor, I think that the defendant's arguments regarding that paragraph are just plainly incorrect for the reasons that... Yeah, but look at the context of this thing. The other potential charges have been discussed. Everybody knew it. There had been an effort to try to get it resolved, and it blew up. It didn't get resolved. So it's not like that other conduct wasn't on everybody's mind. So this doesn't make it clear. Right. The government's position is that the investigation was some steps were taken to look into the mortgage fraud, but the government's investigation was continuing well past the time that the defendant pled guilty to the money laundering case, which is completely unrelated to the charges that were later brought in 2010 regarding a scheme that involved several other defendants other than the defendant in this case. Well, Brown is suggesting that there is a relationship between the charges in the two cases by virtue of the fact that one of the homes posted a security for his bond in 2005 was involved in the frauds charged in 2010. Your Honor, the bond that was posted was something that did go into foreclosure, and the investigators did look into that property and was later charged. It triggered the investigation, didn't it? It's my understanding that was part of what led the investigators to look into the real estate dealings of the defendant, and the fact that that was posted as security in his money laundering case is separate from the fact that there was fraud involved with that property that was later charged and the defendant was later convicted of. And in addition to paragraph 20, the plea agreement itself clearly states that there were no other promises made to the defendant regarding the plea agreement, and the defendant later testified under oath in front of the district court that it was his understanding that there were no other promises made to him outside of the terms of the written agreement, which are clearly limited to just the money laundering charges that were brought in 2005-2006. At no point during the plea colloquy, despite having opportunities to do so, did the defendant or his attorney raise it with the district court that they believed that there were other promises related to mortgage fraud that were not addressed. And nor did the prosecution stand up and say, this plea agreement only applies to the conduct that would arise from this particular case and doesn't cover any other potential charges. So the government didn't clarify it either. I think it's clear in the agreement that the agreement was limited to solely the money laundering charges. And where is that in there? Yeah. It doesn't say solely. Where is that? Where do you read that? On the first page of the plea agreement, I believe it's government appendix page one, it says the plea agreement is entirely voluntary and represents the entire agreement between the United States attorney and defendant regarding defendant's criminal liability in case 05-CR-73, which is the money laundering case. So the agreement was with respect to the money laundering, which was separate criminal conduct from the mortgage fraud investigation. But then you go to paragraph 20. Right. And paragraph 20, as I discussed, is the defendant's, to make sure the defendant understands that if there's a breach of the agreement, the government can pursue the charges that were part of the money laundering indictment. The written agreement also, in addition to the paragraph I just read to the court, it also states that the defendant agreed that there were no threats, promises, or representations made to him to cause him to plead guilty other than those already set forth in the agreement. Unless the court has further questions, I'll conclude by asking you to affirm the judgment of the district court. Do you have any? Okay. Thank you, Ms. Pisolo. Mr. Rosen, come on back. Thank you. Just a brief rebuttal. Sure. I think the language of paragraph 20 does kick in. If he doesn't, my client didn't breach the plea agreement, and he didn't breach the plea agreement by anything he did. I looked at the plea agreement earlier while we were in the attorney's room, and there was nothing in the plea agreement that required that he cooperate against Gus Rice. I think the government indicates that, yes, on August 21, 2006, there had been, quote, some steps, unquote, towards this investigation of a mortgage fraud. I think when you look at Grossi's statements, Moore's statements, Cognata's, the coach's debriefs, everything, they had the case. The case of 10CR-516 was basically done by August 21, 2006. All those properties are named in the Grossi's and Moore's statements. They discuss all that stuff. They discuss everything that's going on. All the other people are named. They knew everything by August 21. So I think that is understated. What about the paragraph counsel read, the first page of the plea agreement, that makes it clear this covers this particular indictment? I was going to get to that, Your Honor. Thank you for bringing that up. It covers the indictment in the plea for the 05CR-73. It covers that in terms of a plea towards that case. However, that doesn't mean that those additional acts that led to the 10CR-516 wasn't part of the plea agreement. It doesn't limit itself. It doesn't say this isn't part of the deal. And there's nothing in the plea agreement that excludes the 10CR-516 case, and as I've indicated, paragraph 20, given the context, any prosecutions includes it. So basically it is the deal in the 05CR-73 case. This 05CR-73 case was resolved. The government agrees to make those recommendations, and as indicated in paragraph 20 in the context and the factual circumstances, corroborates the fact that the mortgage fraud case is resolved too. Everything gets resolved in one big ball of wax with this deal on the 05CR-73 case. So I don't think that paragraph. So if he had robbed a bank and the government had investigated and they had him as a pretty good suspect, but it's not mentioned in this agreement, it's still wiped out by this agreement. No, well, I think if it was discussed, the key is that everybody had discussed this on August before the plea agreement that this was going to encompass, the 05 plea agreement was going to encompass the facts in the 10CR case. That's not what he said, though. When he's asked whether he's got any other agreements, if he was promised anything else, he makes no mention of this bank fraud case. No, he doesn't mention any of it because it's his understanding paragraph 20 covers it because in context of what happened before, the discussions they had before, and Judge Gottschall I think admitted that when she said, okay, so there's no deal on anything other than sentencing. She kind of limited it to sentencing. There was nothing in this case that just limited that. I think when you look at the totality of the circumstances, this didn't have to do if they had been discussing a bank robbery and that was part of it, then that would be part of it. We have to look at not just the facts of the plea agreement, but also we have to look at the facts of how the plea agreement came about, the fact that the government's case fell apart. Exactly, and so really in the totality of the circumstances, the ball was dropped to me by both sides. When you're discussing other potential conduct and it's not clearly spelled out in the plea agreement, there should be a provision in the plea agreement to make the plea agreement bulletproof. I would concur with you on that. The thing is that I think when you look at that, and that's true, but when you look at Ingram and Schilling and the other cases out of this circuit. This is different than Ingram. Ingram spelled it out. Ingram did spell it out. Well, it did spell out any conduct that was out of the state of Colorado.  Well, it said we'll not file any additional charges in the district which are known to the U.S. Attorney's Office arising from his activities in the District of Colorado. That's pretty broad, and that covers everything. That, to me, is bulletproof. And that was pretty broad, and that's kind of what I think paragraph 20 talks about, too, is any prosecutions that are not time-barred is also just as broad. And then I think when you look at the law that Ingram recites and Schilling reaffirms it, you have to look at these things. They're the drafters of the agreement. The government is. It's construed against them. And that if there's more than one reasonable interpretation, but there are unique contracts. There's a supplement that the bargaining process does not violate the defendant's right to fundamental due process, no overreaching. I mean, it's basically said if you're going to, from what I read in Ingram and Schilling, if you're going to err, you err on the side of the defendant because he's giving up his right to a trial. In the 05 CR case, on the day of trial, when he was ready to go to trial, the government got a conviction on that. They got a conviction. They got jail time. And they forced him to go through probation for a period of time when they didn't have a case. Coates had dropped off. He wasn't going to do anything. They didn't have a case. And I think we have to take this in the ball of wax and combs. If there's nothing else, Your Honor, I'm done. Thank you so much. Mr. Rosen, you were appointed. Thank you very much. You really do have the thanks of the court for so well representing your client. Thank you very much. And thanks to the government, of course. The case will be taken under advisement.